816 F.2d 674
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patrick NICHOLS, Defendant-Appellant.
 No. 86-5654.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 19, 1987.
Decided April 15, 1987.
 
 Before HALL and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 Thomas D. Hughes, IV, on brief, for appellant.
 Henry E. Hudson, United States Attorney, on brief, for appellee.
 PER CURIAM:
 
 
 1
 Patrick S. Nichols appeals the district court's denial of his motion to suppress 110 grams of cocaine which were found during a search of his person conducted under a search warrant at Washington National Airport. Nichols pled guilty to possession of cocaine with intent to distribute, reserving the right to appeal the denial of his suppression motion. He claims here that government agents made an unlawful investigative stop when they spoke to him initially, and that they afterward detained and arrested him without probable cause to believe he was committing an offense. We affirm the district court's order denying the motion to suppress.
 
 
 2
 Nichols arrived at Washington National Airport on a flight from Miami about mid-morning on June 25, 1986. He was observed as he approached the baggage claim area by two Drug Enforcement Administration agents, Camille Swanson and Kenneth Rosel, and by Detective Joseph Grimes of the Federal Aviation Administration Police Department. Nichols appeared to be in company with another passenger, later identified as Alexander Knowles, and was carrying a suit bag so that it covered the front of his body. At the baggage carousel, Nichols and Knowles were joined by a black woman. The woman appeared to notice Agent Rosel watching them and made eye contact with Agent Rosel a number of times, after which she spoke to Nichols and Nichols himself turned slowly at that point and made eye contact with Rosel. All three then left the baggage claim and walked separately toward the main terminal, keeping a distance of about fifteen yards between them.
 
 
 3
 Outside the terminal, Rosel approached Nichols, identified himself as a federal agent and asked if he could speak to Nichols for a moment. Nichols agreed, still holding the suit bag so that it covered the front of his body. In the course of the following conversation, Nichols denied that he had arrived on the flight from Miami and that he knew Knowles or the black woman. He denied that the ticket he was holding belonged to him, and claimed that it belonged to Knowles. When Agent Swanson told Nichols that she had seen him get off the flight from Miami, Nichols answered that it was a New York flight, then admitted that he had come from Miami and the ticket he held was his. It was a one-way ticket, purchased for cash.
 
 
 4
 Nichols then allowed Rosel to examine his suit bag. Nichols said that he had been in Miami "one to two weeks." When pressed to be specific, Nichols said he had been there two weeks. Inside the bag was a change of clothes, a pair of shoes and a few toiletries. When Nichols set the bag down to be examined, Rosel saw an unusual protrusion below the waistband of Nichols' pants. After setting the bag down, Nichols put his hands in his pockets and refused to take them out. He denied carrying narcotics, but became visibly nervous when asked if he was. He refused to allow a pat-down search and, given a choice between detention and allowing the pat-down, told Rosel to get a warrant. During this conversation, the woman who had spoken to Nichols at the baggage carousel returned and stood nearby, but did not enter the conversation. At some point during the conversation she walked away. Nichols went with the agents and Detective Grimes to the FAA police office at the airport, where he asked to use the men's room. Detective Grimes accompanied him there and observed a package inside Nichols' pants. After obtaining a search warrant, Rosel found a plastic bag concealed on Nichols which contained about 110 grams of cocaine.
 
 
 5
 Nichols moved to suppress the cocaine, arguing (1) that the agents had made an investigative stop without reasonable and articulable suspicion when they first spoke to him and (2) that there was no probable cause for his detention and later arrest. The motion was denied after an evidentiary hearing in which the district court found that Nichols had not been seized initially because he had consented to speak to the agents and to allow a search of his suit bag, and that probable cause quickly developed thereafter, which justified Nichols' detention to obtain a search warrant.
 
 
 6
 With regard to the initial encounter, a district court's determination that a seizure has or has not occurred is essentially factual and will be upheld unless it is clearly erroneous. United States v. Gooding, 695 F.2d 78 (4th Cir.1982). Although Nichols alleges that he was seized by the agents, the district court here found that the encounter was consensual and lawful. In United States v. Mendenhall, 446 U.S. 544, 553-54 (1980), the Supreme Court decided that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. In the absence of such force or a show of authority which would cause a reasonable person to believe that his freedom of movement had been curtailed, no seizure occurs. Therefore, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, or by putting questions to him. Florida v. Royer, 460 U.S. 491, 497 (1983). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. Id. A person approached in this way may legally disregard the questions put to him and walk away. Mendenhall, 446 U.S. at 554.
 
 
 7
 The inquiry in this case, as in Mendenhall and Royer, is whether the agents did or said anything, before the emergence of probable cause, which would, objectively viewed, have caused Nichols to believe he was not free to leave if he chose. We find that the agents did not engage in any of the conduct which the Supreme Court in Mendenhall identified as likely to give this impression and thus create a seizure. The agents did not behave in a threatening manner, did not display weapons or touch Nichols without permission and did not ask him to leave the public areas or indicate in any way that he might be forced to comply with their request to speak with him. They asked to speak to him and he agreed. In these circumstances, the district court's determination that no seizure occurred was correct.
 
 
 8
 Nichols' contention that probable cause did not exist at the time he was asked to go to the FAA office also fails. Nichols' behavior had been suspicious prior to the time he put down his suit bag and revealed the protuberance under his pants. Nichols had gone to the baggage claim with a companion, left immediately without picking up any baggage upon realizing he was being observed, walked apart from his companions and denied that he knew them, but maintained that the ticket he had belonged to one of them. He had attempted to misrepresent himself as arriving from New York instead of Miami; he was uncertain how long he had been in Miami and did not have enough clothes with him for the two-week stay he finally settled on. He had a one-way ticket paid for in cash. The combination of these factors alone could create a suspicion of illicit activity. All this, added to the unusual bulge under his clothes in an area where Agent Rosel knew from experience that drugs are often concealed and Nichols' nervousness when asked about drugs, produced probable cause--"facts and circumstances ... sufficient to warrant a prudent man in believing that [Nichols] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). Therefore, the detention of Nichols and the search warrant subsequently issued were lawful and did not violate Nichols' Fourth Amendment rights.
 
 
 9
 Accordingly, we affirm the district court's order denying Nichols' motion to suppress the evidence seized and we affirm his conviction. We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.
 
 
 10
 AFFIRMED.